IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EL PASO, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 05-1403 T |
| UNITED STATES OF AMERICA, | ) | Judge Margolis |
| Defendant. | ) | |

**THE PARTIES' STIPULATIONS OF FACT**

Plaintiffs El Paso Global LNG Company ("El Paso Global LNG"), Coastal Eagle Point Oil Company ("Coastal Eagle Point Oil"), Coastal Coal West Virginia, LLC ("Coastal Coal West Virginia"), Coastal Coal Company, LLC ("Coastal Coal"), Coastal Chem, Inc. ("Coastal Chem"), Great Lakes Gas Transmission Company ("Great Lakes Gas"), ANR Pipeline Company ("ANR Pipeline"), ANR Development Corporation ("ANR Development"), Coastal Technology, Inc., nka El Paso Technology, Inc. ("Coastal Technology"), Coastal Tankships USA, Inc., nka El Paso Tankships USA Company ("Coastal Tankships"), Coastal States Trading, nka El Paso Merchant Energy-Petroleum Company, ("Coastal States Trading"), Coastal States Management Corporation ("Coastal States Management"), Coastal Refining & Marketing, Inc., nka El Paso Merchant Energy-Petroleum Company ("Coastal Refining "), Coastal Power Company, nka El Paso CGP Company, ("Coastal Power"), Coastal Oil New England, Inc. ("Coastal Oil New England"), Coastal Mobile Refining Company ("Coastal Mobile Refining"), Coastal Mart, Inc. ("Coastal Mart"), Coastal Javelina, Inc., lka El Paso Javelina Company, LP ("Coastal Javelina"), Coastal Health Management Corporation ("Coastal Health Management"), Coastal Gas Services Company, LLC, nka CIG Merchant Company ("Coastal Gas Services"), El Paso Power Operations Company ("El Paso Power"), El Paso Natural Gas Company ("El Paso Natural

Gas"), El Paso Merchant Energy North America Company ("El Paso Merchant Energy North America"), El Paso Global Networks Company, El Paso Field Services Management, Inc. ("El Paso Field Services Management"), El Paso Field Operations Company ("El Paso Field Operations"), El Paso Energy Service Company, El Paso CGP Company, formerly The Coastal Corporation ("El Paso CGP"), Coscol Petroleum Corporation ("Coscol Petroleum"), Coscol Marine Corporation, nka El Paso Tankships USA Company ("Coscol Marine"), Colorado Interstate Gas Company, Coastal Unilube, Inc. ("Coastal Unilube"), Coastal Travel Mart, Inc., nka El Paso CGP Company, Southern Natural Gas Company ("Southern Natural Gas"), El Paso Production Oil & Gas Company ("El Paso Production Oil & Natural Gas"), El Paso Production Company ("El Paso Production"), El Paso Merchant Energy-Petroleum Company, formerly Coastal Refining & Marketing, Inc. ("El Paso Merchant Energy-Petroleum"), Sandbar Petroleum Company ("Sandbar Petroleum"), Tennessee Gas Pipeline ("Tennessee Gas") (collectively "Plaintiffs") by and through undersigned counsel, and Defendant, United States of America ("Defendant") (collectively, the "Parties"), stipulate as follows:

The following matters are stipulated between the Parties for purposes of the above-entitled action only. The matters set forth herein are not admitted for any other purpose.

1. The Plaintiffs timely filed claims for refund with the IRS for the periods in issue, which claims have been disallowed. The Plaintiffs timely filed suit in this Court to recover on those claims for refund.

2. Beginning in the first quarter of calendar year 2003 and continuing until the third quarter of calendar year 2003, Plaintiff El Paso Global LNG implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

3. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Global LNG beginning in the first quarter of calendar year 2003 and

continuing until the third quarter of calendar year 2003 as part of its restructuring initiatives (the "El Paso Global LNG Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

4. In connection with the Plaintiff El Paso Global LNG restructuring initiatives, Plaintiff El Paso Global LNG participated in termination benefit plans and made monetary payments to the El Paso Global LNG Terminated Employees in accordance with the termination benefit plans ("El Paso Global LNG Termination Payments").

5. The El Paso Global LNG Termination Payments to each El Paso Global LNG Terminated Employee were made because of such El Paso Global LNG Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

6. The El Paso Global LNG Termination Payments to each El Paso Global LNG Terminated Employee were includable in the El Paso Global LNG Terminated Employee's gross income.

7. In connection with the El Paso Global LNG Termination Payments made to the El Paso Global LNG Terminated Employees, Plaintiff El Paso Global LNG paid Federal Insurance Contribution Act ("FICA") employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

8. In connection with the El Paso Global LNG Termination Payments made to the El Paso Global LNG Terminated Employees, Plaintiff El Paso Global LNG withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

9. In each of the first three quarters of calendar year 2003, Plaintiff El Paso Global LNG filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with

the El Paso Global LNG Termination Payments made to the El Paso Global LNG Terminated Employees pursuant to the termination benefit plans.

10. Plaintiff El Paso Global LNG timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Global LNG Terminated Employees for each of the first three (3) quarters in calendar year 2003 pursuant to the termination benefit plans.

11. In the first quarter of calendar year 2001, Plaintiff Coastal Eagle Point Oil implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

12. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Eagle Point Oil in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Eagle Point Oil Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

13. In connection with the Plaintiff Coastal Eagle Point Oil restructuring initiatives, Plaintiff Coastal Eagle Point Oil participated in termination benefit plans and made monetary payments to the Coastal Eagle Point Oil Terminated Employees in accordance with the termination benefit plans ("Coastal Eagle Point Oil Termination Payments").

14. The Coastal Eagle Point Oil Termination Payments to each Coastal Eagle Point Oil Terminated Employee were made because of such Coastal Eagle Point Oil Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

15. The Coastal Eagle Point Oil Termination Payments to each Coastal Eagle Point Oil Terminated Employee were includable in the Coastal Eagle Point Oil Terminated Employee's gross income.

16. In connection with the Coastal Eagle Point Oil Termination Payments made to the Coastal Eagle Point Oil Terminated Employees, Plaintiff Coastal Eagle Point Oil paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

17. In connection with the Coastal Eagle Point Oil Termination Payments made to the Coastal Eagle Point Oil Terminated Employees, Plaintiff Coastal Eagle Point Oil withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

18. In the first quarter of calendar year 2001, Plaintiff Coastal Eagle Point Oil filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Eagle Point Oil Termination Payments made to the Coastal Eagle Point Oil Terminated Employees pursuant to the termination benefit plans.

19. Plaintiff Coastal Eagle Point Oil timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Eagle Point Oil Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

20. In the first quarter of calendar year 2001, the third quarter of calendar year 2002, and the first quarter of calendar year 2003, Plaintiff Coastal Coal West Virginia implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

21. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Coal West Virginia in the first quarter of calendar year 2001, the third quarter of calendar year 2002, and the first quarter of calendar year 2003 as part of its

restructuring initiatives (the "Coastal Coal West Virginia Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

22. In connection with the Plaintiff Coastal Coal West Virginia restructuring initiatives, Plaintiff Coastal Coal West Virginia participated in termination benefit plans and made monetary payments to the Coastal Coal West Virginia Terminated Employees in accordance with the termination benefit plans ("Coastal Coal West Virginia Termination Payments").

23. The Coastal Coal West Virginia Termination Payments to each Coastal Coal West Virginia Terminated Employee were made because of such Coastal Coal West Virginia Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

24. The Coastal Coal West Virginia Termination Payments to each Coastal Coal West Virginia Terminated Employee were includable in the Coastal Coal West Virginia Terminated Employee's gross income.

25. In connection with the Coastal Coal West Virginia Termination Payments made to the Coastal Coal West Virginia Terminated Employees, Plaintiff Coastal Coal West Virginia paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

26. In connection with the Coastal Coal West Virginia Termination Payments made to the Coastal Coal West Virginia Terminated Employees, Plaintiff Coastal Coal West Virginia withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

27. In the first quarter of calendar year 2001, the third quarter of calendar year 2002, and the first quarter of calendar year 2003, Plaintiff Coastal Coal West Virginia filed a Federal

Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Coal West Virginia Termination Payments made to the Coastal Coal West Virginia Terminated Employees pursuant to the termination benefit plans.

28. Plaintiff Coastal Coal West Virginia timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Coal West Virginia Terminated Employees for the first quarter of calendar year 2001, the third quarter of calendar year 2002, and the first quarter of calendar year 2003 pursuant to the termination benefit plans.

29. In the first and second quarters of calendar year 2001 and from the first quarter of calendar year 2002 through the second quarter of calendar year 2003, Plaintiff Coastal Coal implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

30. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Coal in the first and second quarters of calendar year 2001 and from the first quarter of calendar year 2002 through the second quarter of calendar year 2003 as part of its restructuring initiatives (the "Coastal Coal Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

31. In connection with the Plaintiff Coastal Coal restructuring initiatives, Plaintiff Coastal Coal participated in termination benefit plans and made monetary payments to the Coastal Coal Terminated Employees in accordance with the termination benefit plans ("Coastal Coal Termination Payments").

32. The Coastal Coal Termination Payments to each Coastal Coal Terminated Employee were made because of such Coastal Coal Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

33. The Coastal Coal Termination Payments to each Coastal Coal Terminated Employee were includable in the Coastal Coal Terminated Employee's gross income.

34. In connection with the Coastal Coal Termination Payments made to the Coastal Coal Terminated Employees, Plaintiff Coastal Coal paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

35. In connection with the Coastal Coal Termination Payments made to the Coastal Coal Terminated Employees, Plaintiff Coastal Coal withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

36. In the first and second quarters of calendar year 2001 and from the first quarter of calendar year 2002 through the second quarter of calendar year 2003, Plaintiff Coastal Coal filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Coal Termination Payments made to the Coastal Coal Terminated Employees pursuant to the termination benefit plans.

37. Plaintiff Coastal Coal timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Coal Terminated Employees for the first and second quarters of calendar year 2001 and from the first quarter of calendar year 2002 through the second quarter of calendar year 2003 pursuant to the termination benefit plans.

38. In the first and third quarters of calendar year 2001 and the first and second quarters of calendar year 2004, Plaintiff Coastal Chem implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

39. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Chem in the first and third quarters of calendar year 2001 and the first and second quarters of calendar year 2004 as part of its restructuring initiatives (the "Coastal Chem Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

40. In connection with the Plaintiff Coastal Chem restructuring initiatives, Plaintiff Coastal Chem participated in termination benefit plans and made monetary payments to the Coastal Chem Terminated Employees in accordance with the termination benefit plans ("Coastal Chem Termination Payments").

41. The Coastal Chem Termination Payments to each Coastal Chem Terminated Employee were made because of such Coastal Chem Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

42. The Coastal Chem Termination Payments to each Coastal Chem Terminated Employee were includable in the Coastal Chem Terminated Employee's gross income.

43. In connection with the Coastal Chem Termination Payments made to the Coastal Chem Terminated Employees, Plaintiff Coastal Chem paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

44. In connection with the Coastal Chem Termination Payments made to the Coastal Chem Terminated Employees, Plaintiff Coastal Chem withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

45. In the first and third quarters of calendar year 2001 and the first and second quarters of calendar year 2004, Plaintiff Coastal Chem filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Chem Termination Payments made to the Coastal Chem Terminated Employees pursuant to the termination benefit plans.

46. Plaintiff Coastal Chem timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Chem Terminated Employees for the first and third quarters of calendar year 2001 and the first and second quarters of calendar year 2004 pursuant to the termination benefit plans.

47. In the third quarter of calendar year 2001 and from the third quarter of calendar year 2003 through the fourth quarter of calendar year 2004, Plaintiff Great Lakes Gas implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

48. All of the employees who were terminated by or discontinued performing services for Plaintiff Great Lakes Gas beginning in the third quarter of calendar year 2001 and from the third quarter of calendar year 2003 through the fourth quarter of calendar year 2004 as part of its restructuring initiatives (the "Great Lakes Gas Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

49. In connection with the Plaintiff Great Lakes Gas restructuring initiatives, Plaintiff Great Lakes Gas participated in termination benefit plans and made monetary payments to the Great Lakes Gas Terminated Employees in accordance with the termination benefit plans ("Great Lakes Gas Termination Payments").

50. The Great Lakes Gas Termination Payments to each Great Lakes Gas Terminated Employee were made because of such Great Lakes Gas Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

51. The Great Lakes Gas Termination Payments to each Great Lakes Gas Terminated Employee were includable in the Great Lakes Gas Terminated Employee's gross income.

52. In connection with the Great Lakes Gas Termination Payments made to the Great Lakes Gas Terminated Employees, Plaintiff Great Lakes Gas paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

53. In connection with the Great Lakes Gas Termination Payments made to the Great Lakes Gas Terminated Employees, Plaintiff Great Lakes Gas withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

54. In the third quarter of calendar year 2001 and from the third quarter of calendar year 2003 through the fourth quarter of calendar year 2004, Plaintiff Great Lakes Gas filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Great Lakes Gas Termination Payments made to the Great Lakes Gas Terminated Employees pursuant to the termination benefit plans.

55. Plaintiff Great Lakes Gas timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Great Lakes Gas Terminated Employees for the third quarter of calendar year 2001 and from the third quarter of calendar year 2003 through the fourth quarter of calendar year 2004 pursuant to the termination benefit plans.

56. In the first quarter of calendar year 2001 and the second quarter of calendar year 2004, Plaintiff ANR Pipeline implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

57. All of the employees who were terminated by or discontinued performing services for Plaintiff ANR Pipeline in the first quarter of calendar year 2001 and the second quarter of calendar year 2004 as part of its restructuring initiatives (the "ANR Pipeline Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

58. In connection with the Plaintiff ANR Pipeline restructuring initiatives, Plaintiff ANR Pipeline participated in termination benefit plans and made monetary payments to the ANR Pipeline Terminated Employees in accordance with the termination benefit plans ("ANR Pipeline Termination Payments").

59. The ANR Pipeline Termination Payments to each ANR Pipeline Terminated Employee were made because of such ANR Pipeline Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

60. The ANR Pipeline Termination Payments to each ANR Pipeline Terminated Employee were includable in the ANR Pipeline Terminated Employee's gross income.

61. In connection with the ANR Pipeline Termination Payments made to the ANR Pipeline Terminated Employees, Plaintiff ANR Pipeline paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

62. In connection with the ANR Pipeline Termination Payments made to the ANR Pipeline Terminated Employees, Plaintiff ANR Pipeline withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

63. In the first quarter of calendar year 2001 and the second quarter of calendar year 2004, Plaintiff ANR Pipeline filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the ANR Pipeline Termination Payments made to the ANR Pipeline Terminated Employees pursuant to the termination benefit plans.

64. Plaintiff ANR Pipeline timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of ANR Pipeline Terminated Employees for the first quarter of calendar year 2001 and the second quarter of calendar year 2004 pursuant to the termination benefit plans.

65. Beginning in the first quarter of calendar year 2001 and continuing until the third quarter of calendar year 2001, Plaintiff ANR Development implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

66. All of the employees who were terminated by or discontinued performing services for Plaintiff ANR Development beginning in the first quarter of calendar year 2001 and continuing until the third quarter of calendar year 2001 as part of its restructuring initiatives (the "ANR Development Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

67. In connection with the Plaintiff ANR Development restructuring initiatives, Plaintiff ANR Development participated in termination benefit plans and made monetary payments to the ANR Development Terminated Employees in accordance with the termination benefit plans ("ANR Development Termination Payments").

68. The ANR Development Termination Payments to each ANR Development Terminated Employee were made because of such ANR Development Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

69. The ANR Development Termination Payments to each ANR Development Terminated Employee were includable in the ANR Development Terminated Employee's gross income.

70. In connection with the ANR Development Termination Payments made to the ANR Development Terminated Employees, Plaintiff ANR Development paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

71. In connection with the ANR Development Termination Payments made to the ANR Development Terminated Employees, Plaintiff ANR Development withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

72. In each of the first three quarters of calendar year 2001, Plaintiff ANR Development filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the ANR Development Termination Payments made to the ANR Development Terminated Employees pursuant to the termination benefit plans.

73. Plaintiff ANR Development timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of ANR Development Terminated Employees for each of the first three (3) quarters in calendar year 2001 pursuant to the termination benefit plans.

74. In the first quarter of calendar year 2001, Plaintiff Coastal Technology implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

75. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Technology in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Technology Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

76. In connection with the Plaintiff Coastal Technology restructuring initiatives, Plaintiff Coastal Technology participated in termination benefit plans and made monetary payments to the Coastal Technology Terminated Employees in accordance with the termination benefit plans ("Coastal Technology Termination Payments").

77. The Coastal Technology Termination Payments to each Coastal Technology Terminated Employee were made because of such Coastal Technology Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

78. The Coastal Technology Termination Payments to each Coastal Technology Terminated Employee were includable in the Coastal Technology Terminated Employee's gross income.

79. In connection with the Coastal Technology Termination Payments made to the Coastal Technology Terminated Employees, Plaintiff Coastal Technology paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

80. In connection with the Coastal Technology Termination Payments made to the Coastal Technology Terminated Employees, Plaintiff Coastal Technology withheld and paid

FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

81. In the first quarter of calendar year 2001, Plaintiff Coastal Technology filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Technology Termination Payments made to the Coastal Technology Terminated Employees pursuant to the termination benefit plans.

82. Plaintiff Coastal Technology timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Technology Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

83. In the first and second quarters of calendar year 2001 and the first quarter of calendar year 2002, Plaintiff Coastal Tankships implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

84. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Tankships in the first and second quarters of calendar year 2001 and the first quarter of calendar year 2002 as part of its restructuring initiatives (the "Coastal Tankships Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

85. In connection with the Plaintiff Coastal Tankships restructuring initiatives, Plaintiff Coastal Tankships participated in termination benefit plans and made monetary payments to the Coastal Tankships Terminated Employees in accordance with the termination benefit plans ("Coastal Tankships Termination Payments").

86. The Coastal Tankships Termination Payments to each Coastal Tankships Terminated Employee were made because of such Coastal Tankships Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

87. The Coastal Tankships Termination Payments to each Coastal Tankships Terminated Employee were includable in the Coastal Tankships Terminated Employee's gross income.

88. In connection with the Coastal Tankships Termination Payments made to the Coastal Tankships Terminated Employees, Plaintiff Coastal Tankships paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

89. In connection with the Coastal Tankships Termination Payments made to the Coastal Tankships Terminated Employees, Plaintiff Coastal Tankships withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

90. In the first and second quarters of calendar year 2001 and the first quarter of calendar year 2002, Plaintiff Coastal Tankships filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Tankships Termination Payments made to the Coastal Tankships Terminated Employees pursuant to the termination benefit plans.

91. Plaintiff Coastal Tankships timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Tankships Terminated Employees for the first and second quarters of calendar year 2001 and the first quarter of calendar year 2002 pursuant to the termination benefit plans.

92. In the first and second quarters of calendar year 2001, Plaintiff Coastal States Trading implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

93. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal States Trading in the first and second quarters of calendar year 2001 as part of its restructuring initiatives (the "Coastal States Trading Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

94. In connection with the Plaintiff Coastal States Trading restructuring initiatives, Plaintiff Coastal States Trading participated in termination benefit plans and made monetary payments to the Coastal States Trading Terminated Employees in accordance with the termination benefit plans ("Coastal States Trading Termination Payments").

95. The Coastal States Trading Termination Payments to each Coastal States Trading Terminated Employee were made because of such Coastal States Trading Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

96. The Coastal States Trading Termination Payments to each Coastal States Trading Terminated Employee were includable in the Coastal States Trading Terminated Employee's gross income.

97. In connection with the Coastal States Trading Termination Payments made to the Coastal States Trading Terminated Employees, Plaintiff Coastal States Trading paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

98. In connection with the Coastal States Trading Termination Payments made to the Coastal States Trading Terminated Employees, Plaintiff Coastal States Trading withheld and

paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

99. In the first and second quarters of calendar year 2001, Plaintiff Coastal States Trading filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal States Trading Termination Payments made to the Coastal States Trading Terminated Employees pursuant to the termination benefit plans.

100. Plaintiff Coastal States Trading timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal States Trading Terminated Employees for the first and second quarters in calendar year 2001 pursuant to the termination benefit plans.

101. In the first quarter of calendar year 2001, Plaintiff Coastal States Management implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

102. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal States Management in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal States Management Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

103. In connection with the Plaintiff Coastal States Management restructuring initiatives, Plaintiff Coastal States Management participated in termination benefit plans and made monetary payments to the Coastal States Management Terminated Employees in accordance with the termination benefit plans ("Coastal States Management Termination Payments").

104. The Coastal States Management Termination Payments to each Coastal States Management Terminated Employee were made because of such Coastal States Management Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

105. The Coastal States Management Termination Payments to each Coastal States Management Terminated Employee were includable in the Coastal States Management Terminated Employee's gross income.

106. In connection with the Coastal States Management Termination Payments made to the Coastal States Management Terminated Employees, Plaintiff Coastal States Management paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

107. In connection with the Coastal States Management Termination Payments made to the Coastal States Management Terminated Employees, Plaintiff Coastal States Management withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

108. In the first quarter of calendar year 2001, Plaintiff Coastal States Management filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal States Management Termination Payments made to the Coastal States Management Terminated Employees pursuant to the termination benefit plans.

109. Plaintiff Coastal States Management timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal States Management Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

110. Beginning in the first quarter of calendar year 2001 and continuing until the fourth quarter of calendar year 2001, Plaintiff Coastal Refining implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

111. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Refining beginning in the first quarter of calendar year 2001 and continuing until the fourth quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Refining Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

112. In connection with the Plaintiff Coastal Refining restructuring initiatives, Plaintiff Coastal Refining participated in termination benefit plans and made monetary payments to the Coastal Refining Terminated Employees in accordance with the termination benefit plans ("Coastal Refining Termination Payments").

113. The Coastal Refining Termination Payments to each Coastal Refining Terminated Employee were made because of such Coastal Refining Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

114. The Coastal Refining Termination Payments to each Coastal Refining Terminated Employee were includable in the Coastal Refining Terminated Employee's gross income.

115. In connection with the Coastal Refining Termination Payments made to the Coastal Refining Terminated Employees, Plaintiff Coastal Refining paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

116. In connection with the Coastal Refining Termination Payments made to the Coastal Refining Terminated Employees, Plaintiff Coastal Refining withheld and paid FICA

employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

117. In each quarter of calendar year 2001, Plaintiff Coastal Refining filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Refining Termination Payments made to the Coastal Refining Terminated Employees pursuant to the termination benefit plans.

118. Plaintiff Coastal Refining timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Refining Terminated Employees for each quarter in calendar year 2001 pursuant to the termination benefit plans.

119. In the first quarter of calendar year 2001, Plaintiff Coastal Power implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

120. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Power in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Power Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

121. In connection with the Plaintiff Coastal Power restructuring initiatives, Plaintiff Coastal Power participated in termination benefit plans and made monetary payments to the Coastal Power Terminated Employees in accordance with the termination benefit plans ("Coastal Power Termination Payments").

122. The Coastal Power Termination Payments to each Coastal Power Terminated Employee were made because of such Coastal Power Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

123. The Coastal Power Termination Payments to each Coastal Power Terminated Employee were includable in the Coastal Power Terminated Employee's gross income.

124. In connection with the Coastal Power Termination Payments made to the Coastal Power Terminated Employees, Plaintiff Coastal Power paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

125. In connection with the Coastal Power Termination Payments made to the Coastal Power Terminated Employees, Plaintiff Coastal Power withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

126. In the first quarter of calendar year 2001, Plaintiff Coastal Power filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Power Termination Payments made to the Coastal Power Terminated Employees pursuant to the termination benefit plans.

127. Plaintiff Coastal Power timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Power Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

128. In the first quarter of calendar year 2001, Plaintiff Coastal Oil New England implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

129. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Oil New England in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Oil New England Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

130. In connection with the Plaintiff Coastal Oil New England restructuring initiatives, Plaintiff Coastal Oil New England participated in termination benefit plans and made monetary payments to the Coastal Oil New England Terminated Employees in accordance with the termination benefit plans ("Coastal Oil New England Termination Payments").

131. The Coastal Oil New England Termination Payments to each Coastal Oil New England Terminated Employee were made because of such Coastal Oil New England Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

132. The Coastal Oil New England Termination Payments to each Coastal Oil New England Terminated Employee were includable in the Coastal Oil New England Terminated Employee's gross income.

133. In connection with the Coastal Oil New England Termination Payments made to the Coastal Oil New England Terminated Employees, Plaintiff Coastal Oil New England paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

134. In connection with the Coastal Oil New England Termination Payments made to the Coastal Oil New England Terminated Employees, Plaintiff Coastal Oil New England withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

135. In the first quarter of calendar year 2001, Plaintiff Coastal Oil New England filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Oil New England Termination Payments made to the Coastal Oil New England Terminated Employees pursuant to the termination benefit plans.

136. Plaintiff Coastal Oil New England timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Oil New England Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

137. In the first quarter of calendar year 2001, Plaintiff Coastal Mobile Refining implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

138. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Mobile Refining in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Mobile Refining Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

139. In connection with the Plaintiff Coastal Mobile Refining restructuring initiatives, Plaintiff Coastal Mobile Refining participated in termination benefit plans and made monetary payments to the Coastal Mobile Refining Terminated Employees in accordance with the termination benefit plans ("Coastal Mobile Refining Termination Payments").

140. The Coastal Mobile Refining Termination Payments to each Coastal Mobile Refining Terminated Employee were made because of such Coastal Mobile Refining Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

141. The Coastal Mobile Refining Termination Payments to each Coastal Mobile Refining Terminated Employee were includable in the Coastal Mobile Refining Terminated Employee's gross income.

142. In connection with the Coastal Mobile Refining Termination Payments made to the Coastal Mobile Refining Terminated Employees, Plaintiff Coastal Mobile Refining paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

143. In connection with the Coastal Mobile Refining Termination Payments made to the Coastal Mobile Refining Terminated Employees, Plaintiff Coastal Mobile Refining withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

144. In the first quarter of calendar year 2001, Plaintiff Coastal Mobile Refining filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Mobile Refining Termination Payments made to the Coastal Mobile Refining Terminated Employees pursuant to the termination benefit plans.

145. Plaintiff Coastal Mobile Refining timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Mobile Refining Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

146. Beginning in the first quarter of calendar year 2001 and continuing until the third quarter of calendar year 2001, Plaintiff Coastal Mart implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

147. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Mart beginning in the first quarter of calendar year 2001 and continuing until the third quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Mart Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

148. In connection with the Plaintiff Coastal Mart restructuring initiatives, Plaintiff Coastal Mart participated in termination benefit plans and made monetary payments to the Coastal Mart Terminated Employees in accordance with the termination benefit plans ("Coastal Mart Termination Payments").

149. The Coastal Mart Termination Payments to each Coastal Mart Terminated Employee were made because of such Coastal Mart Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

150. The Coastal Mart Termination Payments to each Coastal Mart Terminated Employee were includable in the Coastal Mart Terminated Employee's gross income.

151. In connection with the Coastal Mart Termination Payments made to the Coastal Mart Terminated Employees, Plaintiff Coastal Mart paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

152. In connection with the Coastal Mart Termination Payments made to the Coastal Mart Terminated Employees, Plaintiff Coastal Mart withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

153. In each of the first three quarters of calendar year 2001, Plaintiff Coastal Mart filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the

Coastal Mart Termination Payments made to the Coastal Mart Terminated Employees pursuant to the termination benefit plans.

154. Plaintiff Coastal Mart timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Mart Terminated Employees for each of the first three (3) quarters in calendar year 2001 pursuant to the termination benefit plans.

155. In the first quarter of calendar year 2001, Plaintiff Coastal Javelina implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

156. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Javelina in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Javelina Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

157. In connection with the Plaintiff Coastal Javelina restructuring initiatives, Plaintiff Coastal Javelina participated in termination benefit plans and made monetary payments to the Coastal Javelina Terminated Employees in accordance with the termination benefit plans ("Coastal Javelina Termination Payments").

158. The Coastal Javelina Termination Payments to each Coastal Javelina Terminated Employee were made because of such Coastal Javelina Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

159. The Coastal Javelina Termination Payments to each Coastal Javelina Terminated Employee were includable in the Coastal Javelina Terminated Employee's gross income.

160. In connection with the Coastal Javelina Termination Payments made to the Coastal Javelina Terminated Employees, Plaintiff Coastal Javelina paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

161. In connection with the Coastal Javelina Termination Payments made to the Coastal Javelina Terminated Employees, Plaintiff Coastal Javelina withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

162. In the first quarter of calendar year 2001, Plaintiff Coastal Javelina filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Javelina Termination Payments made to the Coastal Javelina Terminated Employees pursuant to the termination benefit plans.

163. Plaintiff Coastal Javelina timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Javelina Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

164. In the first quarter of calendar year 2001, Plaintiff Coastal Health Management implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

165. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Health Management in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Health Management Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

166. In connection with the Plaintiff Coastal Health Management restructuring initiatives, Plaintiff Coastal Health Management participated in termination benefit plans and made monetary payments to the Coastal Health Management Terminated Employees in accordance with the termination benefit plans ("Coastal Health Management Termination Payments").

167. The Coastal Health Management Termination Payments to each Coastal Health Management Terminated Employee were made because of such Coastal Health Management Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

168. The Coastal Health Management Termination Payments to each Coastal Health Management Terminated Employee were includable in the Coastal Health Management Terminated Employee's gross income.

169. In connection with the Coastal Health Management Termination Payments made to the Coastal Health Management Terminated Employees, Plaintiff Coastal Health Management paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

170. In connection with the Coastal Health Management Termination Payments made to the Coastal Health Management Terminated Employees, Plaintiff Coastal Health Management withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

171. In the first quarter of calendar year 2001, Plaintiff Coastal Health Management filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the

Coastal Health Management Termination Payments made to the Coastal Health Management Terminated Employees pursuant to the termination benefit plans.

172. Plaintiff Coastal Health Management timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Health Management Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

173. In the first quarter of calendar year 2001, Plaintiff Coastal Gas Services implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

174. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Gas Services in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Gas Services Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

175. In connection with the Plaintiff Coastal Gas Services restructuring initiatives, Plaintiff Coastal Gas Services participated in termination benefit plans and made monetary payments to the Coastal Gas Services Terminated Employees in accordance with the termination benefit plans ("Coastal Gas Services Termination Payments").

176. The Coastal Gas Services Termination Payments to each Coastal Gas Services Terminated Employee were made because of such Coastal Gas Services Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

177. The Coastal Gas Services Termination Payments to each Coastal Gas Services Terminated Employee were includable in the Coastal Gas Services Terminated Employee's gross income.

178. In connection with the Coastal Gas Services Termination Payments made to the Coastal Gas Services Terminated Employees, Plaintiff Coastal Gas Services paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

179. In connection with the Coastal Gas Services Termination Payments made to the Coastal Gas Services Terminated Employees, Plaintiff Coastal Gas Services withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

180. In the first quarter of calendar year 2001, Plaintiff Coastal Gas Services filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Gas Services Termination Payments made to the Coastal Gas Services Terminated Employees pursuant to the termination benefit plans.

181. Plaintiff Coastal Gas Services timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Gas Services Terminated Employees for the first quarter in calendar year 2001 pursuant to the termination benefit plans.

182. In the first through third quarters of calendar year 2001, the first quarter of calendar year 2002 through the second quarter of calendar year 2003, and the second quarter of calendar year 2004 through the fourth quarter of calendar year 2004, Plaintiff El Paso Power implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

183. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Power in the first through third quarters of calendar year 2001, the first

quarter of calendar year 2002 through the second quarter of calendar year 2003, and the second quarter of calendar year 2004 through the fourth quarter of calendar year 2004 as part of its restructuring initiatives (the "El Paso Power Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

184. In connection with the Plaintiff El Paso Power restructuring initiatives, Plaintiff El Paso Power participated in termination benefit plans and made monetary payments to the El Paso Power Terminated Employees in accordance with the termination benefit plans ("El Paso Power Termination Payments").

185. The El Paso Power Termination Payments to each El Paso Power Terminated Employee were made because of such El Paso Power Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

186. The El Paso Power Termination Payments to each El Paso Power Terminated Employee were includable in the El Paso Power Terminated Employee's gross income.

187. In connection with the El Paso Power Termination Payments made to the El Paso Power Terminated Employees, Plaintiff El Paso Power paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

188. In connection with the El Paso Power Termination Payments made to the El Paso Power Terminated Employees, Plaintiff El Paso Power withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

189. In the first through third quarters of calendar year 2001, the first quarter of calendar year 2002 through the second quarter of calendar year 2003, and the second quarter of calendar year 2004 through the fourth quarter of calendar year 2004, Plaintiff El Paso Power filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part,

the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Power Termination Payments made to the El Paso Power Terminated Employees pursuant to the termination benefit plans.

190. Plaintiff El Paso Power timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Power Terminated Employees for the first through third quarters of calendar year 2001, the first quarter of calendar year 2002 through the second quarter of calendar year 2003, and the second quarter of calendar year 2004 through the fourth quarter of calendar year 2004 pursuant to the termination benefit plans.

191. In the first through third quarters of calendar year 2001, the third quarters of calendar years 2002 and 2003, and first through third quarters of calendar year 2004, Plaintiff El Paso Natural Gas implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

192. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Natural Gas in the first through third quarters of calendar year 2001, the third quarters of calendar years 2002 and 2003, and first through third quarters of calendar year 2004 as part of its restructuring initiatives (the "El Paso Natural Gas Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

193. In connection with the Plaintiff El Paso Natural Gas restructuring initiatives, Plaintiff El Paso Natural Gas participated in termination benefit plans and made monetary payments to the El Paso Natural Gas Terminated Employees in accordance with the termination benefit plans ("El Paso Natural Gas Termination Payments").

194. The El Paso Natural Gas Termination Payments to each El Paso Natural Gas Terminated Employee were made because of such El Paso Natural Gas Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

195. The El Paso Natural Gas Termination Payments to each El Paso Natural Gas Terminated Employee were includable in the El Paso Natural Gas Terminated Employee's gross income.

196. In connection with the El Paso Natural Gas Termination Payments made to the El Paso Natural Gas Terminated Employees, Plaintiff El Paso Natural Gas paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

197. In connection with the El Paso Natural Gas Termination Payments made to the El Paso Natural Gas Terminated Employees, Plaintiff El Paso Natural Gas withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

198. In the first through third quarters of calendar year 2001, the third quarters of calendar years 2002 and 2003, and first through third quarters of calendar year 2004, Plaintiff El Paso Natural Gas filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Natural Gas Termination Payments made to the El Paso Natural Gas Terminated Employees pursuant to the termination benefit plans.

199. Plaintiff El Paso Natural Gas timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Natural Gas Terminated Employees for the first through third quarters of calendar year 2001, the third quarters of calendar years 2002 and

2003, and first through third quarters of calendar year 2004 pursuant to the termination benefit plans.

200. Beginning in the first quarter of calendar year 2001 and continuing until the fourth quarter of calendar year 2004, Plaintiff El Paso Merchant Energy North America implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

201. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Merchant Energy North America beginning in the first quarter of calendar year 2001 and continuing until the fourth quarter of calendar year 2004 as part of its restructuring initiatives (the "El Paso Merchant Energy North America Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

202. In connection with the Plaintiff El Paso Merchant Energy North America restructuring initiatives, Plaintiff El Paso Merchant Energy North America participated in termination benefit plans and made monetary payments to the El Paso Merchant Energy North America Terminated Employees in accordance with the termination benefit plans ("El Paso Merchant Energy North America Termination Payments").

203. The El Paso Merchant Energy North America Termination Payments to each El Paso Merchant Energy North America Terminated Employee were made because of such El Paso Merchant Energy North America Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

204. The El Paso Merchant Energy North America Termination Payments to each El Paso Merchant Energy North America Terminated Employee were includable in the El Paso Merchant Energy North America Terminated Employee's gross income.

205. In connection with the El Paso Merchant Energy North America Termination Payments made to the El Paso Merchant Energy North America Terminated Employees, Plaintiff El Paso Merchant Energy North America paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

206. In connection with the El Paso Merchant Energy North America Termination Payments made to the El Paso Merchant Energy North America Terminated Employees, Plaintiff El Paso Merchant Energy North America withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

207. In each of the four (4) quarters in calendar years 2001, 2002, 2003, and 2004, Plaintiff El Paso Merchant Energy North America filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Merchant Energy North America Termination Payments made to the El Paso Merchant Energy North America Terminated Employees pursuant to the termination benefit plans.

208. Plaintiff El Paso Merchant Energy North America timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Merchant Energy North America Terminated Employees for each of the four (4) quarters in calendar years 2001, 2002, 2003, and 2004 pursuant to the termination benefit plans.

209. In the third quarter of calendar year 2001 through the first quarter of calendar year 2003, the third quarter of calendar year 2003 through the first quarter of calendar year 2004, and the fourth quarter of calendar year 2004, Plaintiff El Paso Global Networks Company implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

210. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Global Networks Company in the third quarter of calendar year 2001 through the first quarter of calendar year 2003, the third quarter of calendar year 2003 through the first quarter of calendar year 2004, and the fourth quarter of calendar year 2004 as part of its restructuring initiatives (the "El Paso Global Networks Company Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

211. In connection with the Plaintiff El Paso Global Networks Company restructuring initiatives, Plaintiff El Paso Global Networks Company participated in termination benefit plans and made monetary payments to the El Paso Global Networks Company Terminated Employees in accordance with the termination benefit plans ("El Paso Global Networks Company Termination Payments").

212. The El Paso Global Networks Company Termination Payments to each El Paso Global Networks Company Terminated Employee were made because of such El Paso Global Networks Company Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

213. The El Paso Global Networks Company Termination Payments to each El Paso Global Networks Company Terminated Employee were includable in the El Paso Global Networks Company Terminated Employee's gross income.

214. In connection with the El Paso Global Networks Company Termination Payments made to the El Paso Global Networks Company Terminated Employees, Plaintiff El Paso Global Networks Company paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

215. In connection with the El Paso Global Networks Company Termination Payments made to the El Paso Global Networks Company Terminated Employees, Plaintiff El Paso Global

Networks Company withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

216. In the third quarter of calendar year 2001 through the first quarter of calendar year 2003, the third quarter of calendar year 2003 through the first quarter of calendar year 2004, and the fourth quarter of calendar year 2004, Plaintiff El Paso Global Networks Company filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Global Networks Company Termination Payments made to the El Paso Global Networks Company Terminated Employees pursuant to the termination benefit plans.

217. Plaintiff El Paso Global Networks Company timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Global Networks Company Terminated Employees for the third quarter of calendar year 2001 through the first quarter of calendar year 2003, the third quarter of calendar year 2003 through the first quarter of calendar year 2004, and the fourth quarter of calendar year 2004 pursuant to the termination benefit plans.

218. In the first through third quarters of calendar year 2001, and the first quarter of calendar year 2002 through the fourth quarter of calendar year 2004, Plaintiff El Paso Field Services Management implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

219. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Field Services Management in the first through third quarters of calendar year 2001, and the first quarter of calendar year 2002 through the fourth quarter of calendar year 2004 as part of its restructuring initiatives (the "El Paso Field Services Management Terminated

Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

220. In connection with the Plaintiff El Paso Field Services Management restructuring initiatives, Plaintiff El Paso Field Services Management participated in termination benefit plans and made monetary payments to the El Paso Field Services Management Terminated Employees in accordance with the termination benefit plans ("El Paso Field Services Management Termination Payments").

221. The El Paso Field Services Management Termination Payments to each El Paso Field Services Management Terminated Employee were made because of such El Paso Field Services Management Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

222. The El Paso Field Services Management Termination Payments to each El Paso Field Services Management Terminated Employee were includable in the El Paso Field Services Management Terminated Employee's gross income.

223. In connection with the El Paso Field Services Management Termination Payments made to the El Paso Field Services Management Terminated Employees, Plaintiff El Paso Field Services Management paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

224. In connection with the El Paso Field Services Management Termination Payments made to the El Paso Field Services Management Terminated Employees, Plaintiff El Paso Field Services Management withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

225. In the first through third quarters of calendar year 2001, and the first quarter of calendar year 2002 through the fourth quarter of calendar year 2004, Plaintiff El Paso Field

Services Management filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Field Services Management Termination Payments made to the El Paso Field Services Management Terminated Employees pursuant to the termination benefit plans.

226. Plaintiff El Paso Field Services Management timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Field Services Management Terminated Employees for the first through third quarters of calendar year 2001, and the first quarter of calendar year 2002 through the fourth quarter of calendar year 2004 pursuant to the termination benefit plans.

227. In the first quarter of calendar year 2001, Plaintiff El Paso Field Operations implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

228. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Field Operations in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "El Paso Field Operations Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

229. In connection with the Plaintiff El Paso Field Operations restructuring initiatives, Plaintiff El Paso Field Operations participated in termination benefit plans and made monetary payments to the El Paso Field Operations Terminated Employees in accordance with the termination benefit plans ("El Paso Field Operations Termination Payments").

230. The El Paso Field Operations Termination Payments to each El Paso Field Operations Terminated Employee were made because of such El Paso Field Operations

Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

231. The El Paso Field Operations Termination Payments to each El Paso Field Operations Terminated Employee were includable in the El Paso Field Operations Terminated Employee's gross income.

232. In connection with the El Paso Field Operations Termination Payments made to the El Paso Field Operations Terminated Employees, Plaintiff El Paso Field Operations paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

233. In connection with the El Paso Field Operations Termination Payments made to the El Paso Field Operations Terminated Employees, Plaintiff El Paso Field Operations withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

234. In the first quarter of calendar year 2001, Plaintiff El Paso Field Operations filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Field Operations Termination Payments made to the El Paso Field Operations Terminated Employees pursuant to the termination benefit plans.

235. Plaintiff El Paso Field Operations timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Field Operations Terminated Employees for the first quarter of calendar year 2001 pursuant to the termination benefit plans.

236. Beginning in the first quarter of calendar year 2001 and continuing until the fourth quarter of calendar year 2004, Plaintiff El Paso Energy Service Company implemented

various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

237. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Energy Service Company beginning in the first quarter of calendar year 2001 and continuing until the fourth quarter of calendar year 2004 as part of its restructuring initiatives (the "El Paso Energy Service Company Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

238. In connection with the Plaintiff El Paso Energy Service Company restructuring initiatives, Plaintiff El Paso Energy Service Company participated in termination benefit plans and made monetary payments to the El Paso Energy Service Company Terminated Employees in accordance with the termination benefit plans ("El Paso Energy Service Company Termination Payments").

239. The El Paso Energy Service Company Termination Payments to each El Paso Energy Service Company Terminated Employee were made because of such El Paso Energy Service Company Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

240. The El Paso Energy Service Company Termination Payments to each El Paso Energy Service Company Terminated Employee were includable in the El Paso Energy Service Company Terminated Employee's gross income.

241. In connection with the El Paso Energy Service Company Termination Payments made to the El Paso Energy Service Company Terminated Employees, Plaintiff El Paso Energy Service Company paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

242. In connection with the El Paso Energy Service Company Termination Payments made to the El Paso Energy Service Company Terminated Employees, Plaintiff El Paso Energy Service Company withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

243. In each of the four (4) quarters in calendar years 2001, 2002, 2003, and 2004, Plaintiff El Paso Energy Service Company filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Energy Service Company Termination Payments made to the El Paso Energy Service Company Terminated Employees pursuant to the termination benefit plans.

244. Plaintiff El Paso Energy Service Company timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Energy Service Company Terminated Employees for each of the four (4) quarters in calendar years 2001, 2002, 2003, and 2004 pursuant to the termination benefit plans.

245. In the first quarter of calendar year 2001, Plaintiff El Paso CGP implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

246. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso CGP in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "El Paso CGP Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

247. In connection with the Plaintiff El Paso CGP restructuring initiatives, Plaintiff El Paso CGP participated in termination benefit plans and made monetary payments to the El Paso

CGP Terminated Employees in accordance with the termination benefit plans ("El Paso CGP Termination Payments").

248. The El Paso CGP Termination Payments to each El Paso CGP Terminated Employee were made because of such El Paso CGP Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

249. The El Paso CGP Termination Payments to each El Paso CGP Terminated Employee were includable in the El Paso CGP Terminated Employee's gross income.

250. In connection with the El Paso CGP Termination Payments made to the El Paso CGP Terminated Employees, Plaintiff El Paso CGP paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

251. In connection with the El Paso CGP Termination Payments made to the El Paso CGP Terminated Employees, Plaintiff El Paso CGP withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

252. In the first quarter of calendar year 2001, Plaintiff El Paso CGP filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso CGP Termination Payments made to the El Paso CGP Terminated Employees pursuant to the termination benefit plans.

253. Plaintiff El Paso CGP timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso CGP Terminated Employees for the first quarter of calendar year 2001 pursuant to the termination benefit plans.

254. In the first, second and fourth quarters of calendar year 2001 and from the second quarter of calendar year 2002 through the first quarter of calendar year 2003, Plaintiff Coscol

Petroleum implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

255. All of the employees who were terminated by or discontinued performing services for Plaintiff Coscol Petroleum in the first, second and fourth quarters of calendar year 2001 and from the second quarter of calendar year 2002 through the first quarter of calendar year 2003 as part of its restructuring initiatives (the "Coscol Petroleum Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

256. In connection with the Plaintiff Coscol Petroleum restructuring initiatives, Plaintiff Coscol Petroleum participated in termination benefit plans and made monetary payments to the Coscol Petroleum Terminated Employees in accordance with the termination benefit plans ("Coscol Petroleum Termination Payments").

257. The Coscol Petroleum Termination Payments to each Coscol Petroleum Terminated Employee were made because of such Coscol Petroleum Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

258. The Coscol Petroleum Termination Payments to each Coscol Petroleum Terminated Employee were includable in the Coscol Petroleum Terminated Employee's gross income.

259. In connection with the Coscol Petroleum Termination Payments made to the Coscol Petroleum Terminated Employees, Plaintiff Coscol Petroleum paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

260. In connection with the Coscol Petroleum Termination Payments made to the Coscol Petroleum Terminated Employees, Plaintiff Coscol Petroleum withheld and paid FICA

employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

261. In the first, second and fourth quarters of calendar year 2001 and from the second quarter of calendar year 2002 through the first quarter of calendar year 2003, Plaintiff Coscol Petroleum filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coscol Petroleum Termination Payments made to the Coscol Petroleum Terminated Employees pursuant to the termination benefit plans.

262. Plaintiff Coscol Petroleum timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coscol Petroleum Terminated Employees for the first, second and fourth quarters of calendar year 2001 and from the second quarter of calendar year 2002 through the first quarter of calendar year 2003 pursuant to the termination benefit plans.

263. In the first quarter of calendar year 2001, Plaintiff Coscol Marine implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

264. All of the employees who were terminated by or discontinued performing services for Plaintiff Coscol Marine in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coscol Marine Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

265. In connection with the Plaintiff Coscol Marine restructuring initiatives, Plaintiff Coscol Marine participated in termination benefit plans and made monetary payments to the Coscol Marine Terminated Employees in accordance with the termination benefit plans ("Coscol Marine Termination Payments").

266. The Coscol Marine Termination Payments to each Coscol Marine Terminated Employee were made because of such Coscol Marine Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

267. The Coscol Marine Termination Payments to each Coscol Marine Terminated Employee were includable in the Coscol Marine Terminated Employee's gross income.

268. In connection with the Coscol Marine Termination Payments made to the Coscol Marine Terminated Employees, Plaintiff Coscol Marine paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

269. In connection with the Coscol Marine Termination Payments made to the Coscol Marine Terminated Employees, Plaintiff Coscol Marine withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

270. In the first quarter of calendar year 2001, Plaintiff Coscol Marine filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coscol Marine Termination Payments made to the Coscol Marine Terminated Employees pursuant to the termination benefit plans.

271. Plaintiff Coscol Marine timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coscol Marine Terminated Employees for the first quarter of calendar year 2001 pursuant to the termination benefit plans.

272. In the first quarter of calendar year 2001 and the fourth quarter of calendar year 2004, Plaintiff Colorado Interstate Gas Company implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

273. All of the employees who were terminated by or discontinued performing services for Plaintiff Colorado Interstate Gas Company in the first quarter of calendar year 2001 and the fourth quarter of calendar year 2004 as part of its restructuring initiatives (the "Colorado Interstate Gas Company Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

274. In connection with the Plaintiff Colorado Interstate Gas Company restructuring initiatives, Plaintiff Colorado Interstate Gas Company participated in termination benefit plans and made monetary payments to the Colorado Interstate Gas Company Terminated Employees in accordance with the termination benefit plans ("Colorado Interstate Gas Company Termination Payments").

275. The Colorado Interstate Gas Company Termination Payments to each Colorado Interstate Gas Company Terminated Employee were made because of such Colorado Interstate Gas Company Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

276. The Colorado Interstate Gas Company Termination Payments to each Colorado Interstate Gas Company Terminated Employee were includable in the Colorado Interstate Gas Company Terminated Employee's gross income.

277. In connection with the Colorado Interstate Gas Company Termination Payments made to the Colorado Interstate Gas Company Terminated Employees, Plaintiff Colorado Interstate Gas Company paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

278. In connection with the Colorado Interstate Gas Company Termination Payments made to the Colorado Interstate Gas Company Terminated Employees, Plaintiff Colorado

Interstate Gas Company withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

279. In the first quarter of calendar year 2001 and the fourth quarter of calendar year 2004, Plaintiff Colorado Interstate Gas Company filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Colorado Interstate Gas Company Termination Payments made to the Colorado Interstate Gas Company Terminated Employees pursuant to the termination benefit plans.

280. Plaintiff Colorado Interstate Gas Company timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Colorado Interstate Gas Company Terminated Employees for the first quarter of calendar year 2001 and the fourth quarter of calendar year 2004 pursuant to the termination benefit plans.

281. In each of the four quarters of calendar year 2001, the second and third quarters of calendar year 2002, and the first and second quarters of calendar year 2003, Plaintiff Coastal Unilube implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

282. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Unilube in each of the four quarters of calendar year 2001, the second and third quarters of calendar year 2002, and the first and second quarters of calendar year 2003 as part of its restructuring initiatives (the "Coastal Unilube Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

283. In connection with the Plaintiff Coastal Unilube restructuring initiatives, Plaintiff Coastal Unilube participated in termination benefit plans and made monetary payments to the

Coastal Unilube Terminated Employees in accordance with the termination benefit plans ("Coastal Unilube Termination Payments").

284. The Coastal Unilube Termination Payments to each Coastal Unilube Terminated Employee were made because of such Coastal Unilube Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

285. The Coastal Unilube Termination Payments to each Coastal Unilube Terminated Employee were includable in the Coastal Unilube Terminated Employee's gross income.

286. In connection with the Coastal Unilube Termination Payments made to the Coastal Unilube Terminated Employees, Plaintiff Coastal Unilube paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

287. In connection with the Coastal Unilube Termination Payments made to the Coastal Unilube Terminated Employees, Plaintiff Coastal Unilube withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

288. In each of the four quarters of calendar year 2001, the second and third quarters of calendar year 2002, and the first and second quarters of calendar year 2003, Plaintiff Coastal Unilube filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Unilube Termination Payments made to the Coastal Unilube Terminated Employees pursuant to the termination benefit plans.

289. Plaintiff Coastal Unilube timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Unilube Terminated Employees for each of the four

quarters of calendar year 2001, the second and third quarters of calendar year 2002, and the first and second quarters of calendar year 2003 pursuant to the termination benefit plans.

290. In the first quarter of calendar year 2001, Plaintiff Coastal Travel Mart implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

291. All of the employees who were terminated by or discontinued performing services for Plaintiff Coastal Travel Mart in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "Coastal Travel Mart Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

292. In connection with the Plaintiff Coastal Travel Mart restructuring initiatives, Plaintiff Coastal Travel Mart participated in termination benefit plans and made monetary payments to the Coastal Travel Mart Terminated Employees in accordance with the termination benefit plans ("Coastal Travel Mart Termination Payments").

293. The Coastal Travel Mart Termination Payments to each Coastal Travel Mart Terminated Employee were made because of such Coastal Travel Mart Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

294. The Coastal Travel Mart Termination Payments to each Coastal Travel Mart Terminated Employee were includable in the Coastal Travel Mart Terminated Employee's gross income.

295. In connection with the Coastal Travel Mart Termination Payments made to the Coastal Travel Mart Terminated Employees, Plaintiff Coastal Travel Mart paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

296. In connection with the Coastal Travel Mart Termination Payments made to the Coastal Travel Mart Terminated Employees, Plaintiff Coastal Travel Mart withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

297. In the first quarter of calendar year 2001, Plaintiff Coastal Travel Mart filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Coastal Travel Mart Termination Payments made to the Coastal Travel Mart Terminated Employees pursuant to the termination benefit plans.

298. Plaintiff Coastal Travel Mart timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Coastal Travel Mart Terminated Employees for the first quarter of calendar year 2001 pursuant to the termination benefit plans.

299. In the first and third quarters of calendar year 2001, the third quarter of calendar year 2002, and the first quarter of calendar year 2004, Plaintiff Southern Natural Gas implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

300. All of the employees who were terminated by or discontinued performing services for Plaintiff Southern Natural Gas in the first and third quarters of calendar year 2001, the third quarter of calendar year 2002, and the first quarter of calendar year 2004 as part of its restructuring initiatives (the "Southern Natural Gas Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

301. In connection with the Plaintiff Southern Natural Gas restructuring initiatives, Plaintiff Southern Natural Gas participated in termination benefit plans and made monetary

payments to the Southern Natural Gas Terminated Employees in accordance with the termination benefit plans ("Southern Natural Gas Termination Payments").

302. The Southern Natural Gas Termination Payments to each Southern Natural Gas Terminated Employee were made because of such Southern Natural Gas Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

303. The Southern Natural Gas Termination Payments to each Southern Natural Gas Terminated Employee were includable in the Southern Natural Gas Terminated Employee's gross income.

304. In connection with the Southern Natural Gas Termination Payments made to the Southern Natural Gas Terminated Employees, Plaintiff Southern Natural Gas paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

305. In connection with the Southern Natural Gas Termination Payments made to the Southern Natural Gas Terminated Employees, Plaintiff Southern Natural Gas withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

306. In the first and third quarters of calendar year 2001, the third quarter of calendar year 2002, and the first quarter of calendar year 2004, Plaintiff Southern Natural Gas filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Southern Natural Gas Termination Payments made to the Southern Natural Gas Terminated Employees pursuant to the termination benefit plans.

307. Plaintiff Southern Natural Gas timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer

taxes it paid and/or withheld on behalf of Southern Natural Gas Terminated Employees for the first and third quarters of calendar year 2001, the third quarter of calendar year 2002, and the first quarter of calendar year 2004 pursuant to the termination benefit plans.

308. In the first quarter of calendar year 2001, Plaintiff El Paso Production Oil & Natural Gas implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

309. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Production Oil & Natural Gas in the first quarter of calendar year 2001 as part of its restructuring initiatives (the "El Paso Production Oil & Natural Gas Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

310. In connection with the Plaintiff El Paso Production Oil & Natural Gas restructuring initiatives, Plaintiff El Paso Production Oil & Natural Gas participated in termination benefit plans and made monetary payments to the El Paso Production Oil & Natural Gas Terminated Employees in accordance with the termination benefit plans ("El Paso Production Oil & Natural Gas Termination Payments").

311. The El Paso Production Oil & Natural Gas Termination Payments to each El Paso Production Oil & Natural Gas Terminated Employee were made because of such El Paso Production Oil & Natural Gas Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

312. The El Paso Production Oil & Natural Gas Termination Payments to each El Paso Production Oil & Natural Gas Terminated Employee were includable in the El Paso Production Oil & Natural Gas Terminated Employee's gross income.

313. In connection with the El Paso Production Oil & Natural Gas Termination Payments made to the El Paso Production Oil & Natural Gas Terminated Employees, Plaintiff El Paso Production Oil & Natural Gas paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

314. In connection with the El Paso Production Oil & Natural Gas Termination Payments made to the El Paso Production Oil & Natural Gas Terminated Employees, Plaintiff El Paso Production Oil & Natural Gas withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

315. In the first quarter of calendar year 2001, Plaintiff El Paso Production Oil & Natural Gas filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Production Oil & Natural Gas Termination Payments made to the El Paso Production Oil & Natural Gas Terminated Employees pursuant to the termination benefit plans.

316. Plaintiff El Paso Production Oil & Natural Gas timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Production Oil & Natural Gas Terminated Employees for the first quarter of calendar year 2001 pursuant to the termination benefit plans.

317. In the first quarter of calendar year 2001 through the third quarter of calendar year 2003 and each quarter of calendar year 2004, Plaintiff El Paso Production implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

318. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Production in the first quarter of calendar year 2001 through the third quarter of calendar year 2003 and each quarter of calendar year 2004 as part of its restructuring initiatives (the "El Paso Production Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

319. In connection with the Plaintiff El Paso Production restructuring initiatives, Plaintiff El Paso Production participated in termination benefit plans and made monetary payments to the El Paso Production Terminated Employees in accordance with the termination benefit plans ("El Paso Production Termination Payments").

320. The El Paso Production Termination Payments to each El Paso Production Terminated Employee were made because of such El Paso Production Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

321. The El Paso Production Termination Payments to each El Paso Production Terminated Employee were includable in the El Paso Production Terminated Employee's gross income.

322. In connection with the El Paso Production Termination Payments made to the El Paso Production Terminated Employees, Plaintiff El Paso Production paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

323. In connection with the El Paso Production Termination Payments made to the El Paso Production Terminated Employees, Plaintiff El Paso Production withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

324. In the first quarter of calendar year 2001 through the third quarter of calendar year 2003 and each quarter of calendar year 2004, Plaintiff El Paso Production filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Production Termination Payments made to the El Paso Production Terminated Employees pursuant to the termination benefit plans.

325. Plaintiff El Paso Production timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Production Terminated Employees in the first quarter of calendar year 2001 through the third quarter of calendar year 2003 and each quarter of calendar year 2004 pursuant to the termination benefit plans.

326. Beginning in the first quarter of calendar year 2002 and continuing until the fourth quarter of calendar year 2004, Plaintiff El Paso Merchant Energy-Petroleum implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

327. All of the employees who were terminated by or discontinued performing services for Plaintiff El Paso Merchant Energy-Petroleum beginning in the first quarter of calendar year 2002 and continuing until the fourth quarter of calendar year 2004 as part of its restructuring initiatives (the "El Paso Merchant Energy-Petroleum Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

328. In connection with the Plaintiff El Paso Merchant Energy-Petroleum restructuring initiatives, Plaintiff El Paso Merchant Energy-Petroleum participated in termination benefit plans and made monetary payments to the El Paso Merchant Energy-Petroleum Terminated Employees

in accordance with the termination benefit plans ("El Paso Merchant Energy-Petroleum Termination Payments").

329. The El Paso Merchant Energy-Petroleum Termination Payments to each El Paso Merchant Energy-Petroleum Terminated Employee were made because of such El Paso Merchant Energy-Petroleum Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

330. The El Paso Merchant Energy-Petroleum Termination Payments to each El Paso Merchant Energy-Petroleum Terminated Employee were includable in the El Paso Merchant Energy-Petroleum Terminated Employee's gross income.

331. In connection with the El Paso Merchant Energy-Petroleum Termination Payments made to the El Paso Merchant Energy-Petroleum Terminated Employees, Plaintiff El Paso Merchant Energy-Petroleum paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

332. In connection with the El Paso Merchant Energy-Petroleum Termination Payments made to the El Paso Merchant Energy-Petroleum Terminated Employees, Plaintiff El Paso Merchant Energy-Petroleum withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

333. In each of the four (4) quarters in calendar years 2002, 2003, and 2004, Plaintiff El Paso Merchant Energy-Petroleum filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the El Paso Merchant Energy-Petroleum Termination Payments made to the El Paso Merchant Energy-Petroleum Terminated Employees pursuant to the termination benefit plans.

334. Plaintiff El Paso Merchant Energy-Petroleum timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of El Paso Merchant Energy-Petroleum Terminated Employees for each of the four (4) quarters in calendar years 2002, 2003, and 2004 pursuant to the termination benefit plans.

335. In the second quarter of calendar year 2003 and the first through third quarters of calendar year 2004, Plaintiff Sandbar Petroleum implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

336. All of the employees who were terminated by or discontinued performing services for Plaintiff Sandbar Petroleum in the second quarter of calendar year 2003 and the first through third quarters of calendar year 2004 as part of its restructuring initiatives (the “Sandbar Petroleum Terminated Employees”) suffered an involuntary separation from employment resulting directly from a reduction in force.

337. In connection with the Plaintiff Sandbar Petroleum restructuring initiatives, Plaintiff Sandbar Petroleum participated in termination benefit plans and made monetary payments to the Sandbar Petroleum Terminated Employees in accordance with the termination benefit plans (“Sandbar Petroleum Termination Payments”).

338. The Sandbar Petroleum Termination Payments to each Sandbar Petroleum Terminated Employee were made because of such Sandbar Petroleum Terminated Employee’s involuntary separation from employment which had resulted directly from a reduction in force.

339. The Sandbar Petroleum Termination Payments to each Sandbar Petroleum Terminated Employee were includable in the Sandbar Petroleum Terminated Employee’s gross income.

340. In connection with the Sandbar Petroleum Termination Payments made to the Sandbar Petroleum Terminated Employees, Plaintiff Sandbar Petroleum paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

341. In connection with the Sandbar Petroleum Termination Payments made to the Sandbar Petroleum Terminated Employees, Plaintiff Sandbar Petroleum withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

342. In the second quarter of calendar year 2003 and the first through third quarters of calendar year 2004, Plaintiff Sandbar Petroleum filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Sandbar Petroleum Termination Payments made to the Sandbar Petroleum Terminated Employees pursuant to the termination benefit plans.

343. Plaintiff Sandbar Petroleum timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Sandbar Petroleum Terminated Employees for the second quarter of calendar year 2003 and the first through third quarters of calendar year 2004 pursuant to the termination benefit plans.

344. In the first through the third quarters of calendar year 2004, Plaintiff Tennessee Gas implemented various restructuring initiatives requiring reductions in force and involuntary terminations of certain of its employees.

345. All of the employees who were terminated by or discontinued performing services for Plaintiff Tennessee Gas in the first through the third quarters of calendar year 2004 as part of

its restructuring initiatives (the "Tennessee Gas Terminated Employees") suffered an involuntary separation from employment resulting directly from a reduction in force.

346. In connection with the Plaintiff Tennessee Gas restructuring initiatives, Plaintiff Tennessee Gas participated in termination benefit plans and made monetary payments to the Tennessee Gas Terminated Employees in accordance with the termination benefit plans ("Tennessee Gas Termination Payments").

347. The Tennessee Gas Termination Payments to each Tennessee Gas Terminated Employee were made because of such Tennessee Gas Terminated Employee's involuntary separation from employment which had resulted directly from a reduction in force.

348. The Tennessee Gas Termination Payments to each Tennessee Gas Terminated Employee were includable in the Tennessee Gas Terminated Employee's gross income.

349. In connection with the Tennessee Gas Termination Payments made to the Tennessee Gas Terminated Employees, Plaintiff Tennessee Gas paid FICA employer taxes to the Internal Revenue Service under Sections 3111(a) and 3111(b) of the Internal Revenue Code.

350. In connection with the Tennessee Gas Termination Payments made to the Tennessee Gas Terminated Employees, Plaintiff Tennessee Gas withheld and paid FICA employee taxes to the Internal Revenue Service under Sections 3101(a) and 3101(b) of the Internal Revenue Code.

351. In the first through the third quarters of calendar year 2004, Plaintiff Tennessee Gas filed a Federal Insurance Contributions Act ("FICA") tax return on Form 941 reflecting, in part, the actual amount of FICA employee and FICA employer taxes it paid in connection with the Tennessee Gas Termination Payments made to the Tennessee Gas Terminated Employees pursuant to the termination benefit plans.

352. Plaintiff Tennessee Gas timely filed a Claim for Refund on Form 843 with the Internal Revenue Service with respect to amounts of FICA employee and FICA employer taxes it paid and/or withheld on behalf of Tennessee Gas Terminated Employees for the first through the third quarters of calendar year 2004 pursuant to the termination benefit plans.

DATE: 07/27/07

Respectfully submitted,

/s/

Craig A. Etter, Esq.
Greenberg Traurig, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Phone (703) 749-1315
Facsimile (703) 714-8315

Attorney of Record for Plaintiff

OF COUNSEL:
Timothy J. Jessell, Esq.
Greenberg Traurig, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Phone (703) 749-1309
Facsimile (703) 714-8309

DATE: 07/27/07

/s/

BENJAMIN C. KING, JR.
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, DC 20044
Phone (202) 307-6506

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief,
Court of Federal Claims Section

DATE: 07/27/07

/s/

Of Counsel

Dated: July 27, 2007